GARY ARNOLD KALBFLEISCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kalbfleisch v. Commissioner
Docket No. 10876-89
United States Tax Court
T.C. Memo 1991-61; 1991 Tax Ct. Memo LEXIS 80; 61 T.C.M. (CCH) 1902; T.C.M. (RIA) 91061; February 20, 1991, Filed *80 Decision will be entered for the respondent. Gary A. Kalbfleisch, pro se. Bradley D. Magee, for the respondent. NAMEROFF, Special Trial Judge. NAMEROFF
MEMORANDUM OPINION This case was heard pursuant to section 7443A(b)(3) [1] and Rules 180 et seq. Respondent determined a deficiency in petitioner's 1985 Federal income tax in the amount of $ 4,486. The issues to be decided are: 1) Whether petitioner is entitled to deduct a Schedule C loss in the amount of $ 6,085; and 2) whether petitioner is entitled to deduct casualty losses in the amount of $ 9,402. Petitioner conceded the only other adjustment in the notice of deficiency pertaining to unreported income received from a State tax refund. Some of the facts have been stipulated and are so found. The stipulation of facts, the second stipulation of facts, the exhibits attached *81 thereto, and the exhibits orally stipulated are incorporated herein by reference. Petitioner resided in Reseda, California, at the time of the filing of the petition. For convenience, we will combine the specific findings of facts and opinion for each issue. Schedule C Losses
Petitioner received a bachelor of science degree from the California State College at Long Beach in 1971. Subsequently, he has had various positions, including several companies in the aerospace industry, involved with writing skills. According to his resume, most of these positions involved the writing of technical manuals, proposals, test procedures, designs, and contracts. Petitioner not only was responsible for writing some of these documents, but also was responsible for editing such documents written by others. In late 1984 or 1985, petitioner commenced an activity involving writing, publishing, art, painting, and photography. He decided that there was a market for short stories, particularly short stories that were four pages or less in length. The record reflects that petitioner only wrote one short story in 1985 -- "Raise the Obelisk in the Town Square" -- purportedly a four-page illustrated *82 short story which petitioner attempted to sell for $ 1.00 per issue. [2] Petitioner's marketing effort for his short stories was to publish a catalog of those short stories. It is not clear how and where the catalog was circulated. In years after 1985, petitioner wrote more short stories. One exhibit was a three-page catalog describing 23 short stories, of which 3 are dated in 1989, 13 in 1988, 1 in 1987, and 7 in 1986. The catalog prices for the short stories range in 50-cent increments from 50 cents to $ 2.00. There is no evidence that any short story was ever sold. Also in 1985, petitioner conceived the idea of publishing "The Political Needle," a pamphlet containing petitioner's views and opinions of the political scene. Initially *83 this document began as a one-page publication. As the years progressed, it grew larger and contained articles written by free-lance writers, as well as those of petitioner/publisher, plus some photographs and poetry. Initially petitioner attempted to market "The Political Needle" by arranging to have it on display at one or more local newsstands on a consignment basis. In subsequent years, petitioner also offered subscriptions by mail, although it is unclear from the record how the subscription offer was publicized, if in any other way than being part of the pamphlet itself. The terms of the consignment agreements with the various newsstand owners were a 50/50 share of the suggested sales price of $ 1.00. Petitioner had no gross income from this activity in 1984, 1985, or 1986. Gross income reported by petitioner in 1987 and 1988 was $ 85 and $ 44, respectively. There is no evidence that petitioner ever contacted any third parties, advisors, or experts to determine whether there was a need and market for very short stories or a political opinion pamphlet. In 1985, petitioner also had a painting activity. He attempted to market his art at one or more local swap meets. There *84 is no evidence in the record as to petitioner's background with regard to art or any attempts to determine whether and how such an activity can be a profit making activity. Petitioner's Schedule C for 1985 reflects no gross income and claims the following expenses: Advertising
$    64.75
Car and truck expenses
1,154.59
Commission
1,255.00
Depreciation
792.00
Laundry and cleaning
105.18
Legal and professional services
464.91
Office expense
404.53
Rent on business property
240.00
Supplies
767.59
Travel and entertainment
544.38
Entertainment
289.55
"Trans. fares, etc."
48.95
Petty cash
573.44
Charity
9.54
Total
[3] $ 6,698.54
From $ 6,698.54, petitioner deducted $ 613.81 as purported inventory at the end of the year, resulting in the computed loss of $ 6,084.73. Petitioner contends that most of his records supporting these deductions were contained in a trunk, which were lost when the trunk was vandalized during *85 a move subsequent to 1985. Accordingly, he has very few 1985 records. He does have a computer printout showing his cash expenses for 1985. Petitioner kept no record of the actual use of any vehicle during 1985. The expenses claimed for commissions pertain to payments to a female friend for the cleaning of petitioner's apartment. Some of the travel expenses claimed allegedly involve petitioner's trips to various tourist areas, such as Disneyland, with a female friend. Petitioner explained that he was looking for interesting stories to write and also needed to take pictures to accompany some of the short stories that he was writing. Petitioner claimed casualty losses for 1985 totalling $ 9,402. Included in the amounts claimed as casualty losses were: rent $ 5,736, trailer $ 200, two tires $ 70, tape, wiring and camera $ 28. Petitioner now alleges that these items should have been additional business losses because they relate to his business activity. The "casualty loss" with regard to the rent expense pertains to petitioner's contention that he was deprived of the peaceful use of his apartment by various acts of vandalism and maliciousness, by neighbors and other employees *86 from his various places of employment. The record does not indicate whether the amount claimed was the entire amount of the rent paid during 1985 or some sort of allocation thereof. Section 183(a) generally provides that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided by this section." [4] The standard for determining whether an individual engaged in an activity for profit, thereby enabling the deduction of appropriate expenses under section 162 or 212, is whether the taxpayer engaged in the activity "with the actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, the facts and circumstances must indicate that the taxpayer had the requisite profit objective. Dreicer v. Commissioner, supra.The burden of proving such objective is on petitioner. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). The existence of the *87 requisite profit objective is a factual question that must be determined upon the record. Benz v. Commissioner, 63 T.C. 375, 382 (1974). The regulations contain relevant factors for consideration in determining whether an activity is engaged in for profit. Section 1.183-2(b), Income Tax Regs., includes the following factors: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate *88 in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profit, if any, which is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. No one factor is controlling. Sec. 1.183-2(b), Income Tax Regs.; Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). While losses during the start-up phase of an activity are not necessarily fatal to a section 183 determination, the ultimate goal of an activity engaged in for profit must be to realize a net profit on the activity so as to recoup losses sustained previously. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). For reasons set forth below, we hold that petitioner did not have an actual and honest profit-making objective in 1985. An analysis of petitioner's various writing, publishing, *89 and painting activities compels this Court to conclude, without analyzing all nine factors in depth, that petitioner did not have the requisite profit objectives. Petitioner made no serious effort to analyze the economic viability of his activity. Petitioner did not seek any expert advice on how to start or maintain such a business. While petitioner had writing skills, it appears that they were mainly in the technical fields. There is no indication that he could contribute anything in the personal reading or political arenas that could be considered marketable. Petitioner made no projections of income or expenses during the year at issue or subsequent years. Petitioner had no marketing program which was calculated to enable him to recoup not only his expenses, but also to make a profit. Petitioner merely hoped that somehow word of his short stories and/or "The Political Needle" would get to the public, and that the public would accept and be willing to pay for such publications in sufficient quantity as to enable the petitioner to make a profit. Hope is not indicative of an actual and honest profit making objective. There is no indication in the record as to the amount of *90 time spent by petitioner in these various activities. However, petitioner did testify that he had to cut back on his writing activities when he was out of work during 1985 for a short period of time. This further indicates that petitioner's sporadic activity was nothing more than a hobby. Petitioner was keenly aware that most of his time and effort needed to be devoted to seeking and maintaining income-producing activities. Other than characterizing numerous personal expenses as business expenses, petitioner devoted very little capital to his writing activity. Overall, there is little indication that any of petitioner's activities ever had the ability to be profitable, or that petitioner actually expected them to be profitable. Respondent's disallowance of petitioner's Schedule C loss for 1985 is sustained. Casualty and Theft Losses
For 1985, petitioner claimed casualty and theft losses totalling $ 9,402 comprised of the following: Jacket
$   350.00
Insurance policy
2,500.00
Tape
3.00
Wiring
15.00
Camera
10.00
Rent
5,736.00
Trailer
200.00
Tire
50.00
Bank
400.00
Tire
20.00
Total
[5] $   9,402.00
*91 One day in 1985, petitioner discovered that his storage trailer had been vandalized. It appeared to have been hit with an axe. One of the tires was slashed. Petitioner paid $ 250 to repair these items. The wiring expense of $ 15 was also incurred in connection with the trailer incident. The other tire involved an incident in which the tire on petitioner's car was slashed with a knife; petitioner spent $ 20 to repair it. The $ 3 for the tape pertains to a tape that was damaged in petitioner's answering machine. There was no evidence as to the camera item, other than petitioner's claim that the camera was damaged by vandals. On March 29, 1983, the New York Life Insurance Company issued to petitioner, on his life, a whole-life policy in the face amount of $ 5,000, with an accidental death benefit and disability waiver of premium. Petitioner does not recall receiving any renewal premiums and believes the policy ceased to exist. Therefore, he claimed a casualty loss on the basis of 50 percent of the face value of the policy. As best the Court can tell, the policy was cancelled because of nonpayment of premium. Petitioner had a jacket which was stolen from his apartment. Petitioner *92 recovered $ 150 from his insurance company with regard to the jacket. No evidence was submitted with regard to the cost of the jacket, although petitioner estimated its replacement value to be about $ 350. Petitioner does not know how old the jacket was, where he bought it, or what he paid for it. The item for the "bank" pertains to petitioner's contention that his bank took $ 400 out of his account without appropriate authority. However, petitioner has not submitted any appropriate, corroborating bank records, nor did he subpoena any bank officials to verify the alleged facts. Section 165(a) generally allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c)(3) limits the deduction for individuals for losses of property not connected with a trade or business to losses due to a fire or other casualty or theft. The oft-quoted definition of casualty is set forth in Fay v. Helvering, 120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940), as "an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through *93 a steadily operating cause." Section 165(h) provides that each casualty or theft loss must exceed $ 100. Finally, the total amount of all casualty or theft losses is allowable only to the extent that it exceeds 10 percent of the taxpayer's adjusted gross income. Section 165(c)(3) and (e) permits the deduction of any loss arising from theft. In order to establish a loss for theft or casualty, petitioner must show the difference between the fair market value of the asset immediately before the theft or casualty and the fair market value of the asset after the incident, or his adjusted basis in the asset. Sec. 1.165-7(a)(2)(i), Income Tax Regs. See also Pfalzgraf v. Commissioner, 67 T.C. 784, 787 (1977). We are permitted to take into account the amount spent for repairs in lieu of proof of the fair market values before and after the incident. (The fair market value of an asset after a theft thereof is, of course, zero.) The claimed casualty loss with regard to petitioner's rent expense does not satisfy the statutory requirement that there be a sudden identifiable outside force, nor does petitioner's rent create a property interest with a fair market value. *94 Assuming that petitioner's allegations of continuous harassment by neighbors and fellow workers deprived him of peaceful usage of his apartment, we find that such harassment, in and of itself, does not fall under the definition of a casualty loss. Petitioner's remedy from the harassment and vandalism to his peaceful enjoyment would be found in civil or criminal remedies, but not in the Internal Revenue Code. With regard to the claimed loss in connection with the insurance policy, we similarly hold that petitioner has not established that any casualty or theft occurred. What appears to have occurred was a contractual matter where the policy was forfeited by reason of nonpayment of premium. Such a transaction would not give rise to any deductible loss, inasmuch as the insurance policy was a purely personal asset. [6]
Similarly, petitioner has not established *95 that he is entitled to any loss with regard to the bank transaction. The details of the transaction are unproven. If the bank erroneously charged petitioner's account $ 400, petitioner would have a civil remedy for recovery. The losses claimed with regard to the tape, camera, and the $ 20 tire are below the $ 100 minimum permitted by the statute and, therefore, are not deductible. With regard to the theft of the jacket, petitioner has failed to prove the fair market value of the jacket prior to the theft or his adjusted basis therein. Accordingly, we cannot allow any loss with regard thereto. Finally, we are satisfied that petitioner did incur $ 265 in repairs to his trailer and tire in connection with an act of vandalism and did suffer a casualty to that extent. However, because petitioner's itemized deductions are substantially less than the zero bracket amount included in the tax tables for 1985, a $ 165 additional casualty allowance (without regard to consideration of the adjusted gross income limitation) would have no tax effect. Therefore, no computation under Rule 155 is necessary. We hold for respondent. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We are constrained to note that the bulk of the stipulated evidence in this case pertains to years after 1985, in particular, the years 1988 and 1989. We cannot give any significant weight to those facts as they purport to reflect petitioner's profit-making objective in 1985.↩
3. Neither party recognized that the correct total of this column is $ 6,714.41.↩
4. Section 183(b)(1) allows deductions related to the activity that are allowable regardless of whether the activity is engaged in for profit, such as interest and taxes. In addition, section 183(b)(2) authorizes a deduction for other expenses related to the activity to the extent that the gross income derived from the activity exceeds the deductions that are allowable, irrespective of an objective to realize a profit.↩
5. Neither party recognized that the correct total of this column is $ 9,284.↩
6. Under no circumstances could petitioner be said to have incurred a loss of one-half of the death benefit. Any loss would be limited to his basis in the policy.↩